**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Timothy Simmons,<br><br>Plaintiff,<br><br>v.<br><br>Charleston Gate, LLC; International Longshoremen Assoc.1422A; Bill McCarthy; and Leonard Bailey,<br><br>Defendants. | ) | Case No. 2:25-cv-13958-RMG-MGB<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, proceeding *pro se*, filed this employment discrimination lawsuit bringing federal causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"), and related state law claims. (Dkt. No. 1.) Under Local Civil Rule 73.02(B)(2) (D.S.C.), pretrial proceedings in this action have been referred to the assigned United States Magistrate Judge. The matter is now before the Court upon a Motion to Dismiss or, in the alternative, Motion for Summary Judgment filed by Defendants Charleston Gate, LLC ("Charleston Gate") and Bill McCarthy ("McCarthy") (together, the "Moving Defendants") (Dkt. No. 15). For the reasons set forth below, the undersigned **RECOMMENDS** that the motion should be **GRANTED**, and Plaintiff's claims against the Moving Defendants should be **DISMISSED**.

## FACTUAL SUMMARY

This case arises from Plaintiff's prior employment "working as a union member in Feb[ruary] 2022." (Dkt. No. 1 at 5.) According to Plaintiff's unverified Complaint,[1] he is a

[1] "In this Circuit, verified complaints by *pro se* litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge." *Brooks v. Davenport*, No. 9:15-cv-3107-PMD-BM, 2016 WL 11431331, at *1 (D.S.C. Aug. 22, 2016) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)),

qualified welder and HVAC technician. (*Id.*) Plaintiff claims that these are among the highest-paid skills in the union. (*Id.*)

Plaintiff claims that he suffers from "PTSD and severe anxiety caused by a work-related injury." (*Id.*) Plaintiff alleges that he disclosed his disabilities and was medically cleared to work but was "repeatedly denied available positions." (*Id.* at 6.) Plaintiff further claims that he was instructed to leave work despite his medical clearance. (*Id.*) When he filed a grievance, the union allegedly "failed to represent [him], [] violat[ing] the collective bargaining agreement." (*Id.*) Plaintiff alleges that the union also "issued a 'no merit' response without explanation." (*Id.*) Then, on December 12, 2024, Plaintiff reported to work but "was denied the ability to work and terminated the same day." (*Id.*) Plaintiff claims that "[a]s a result, [he] lost wages, [and] suffered emotional distress, depression, anxiety, insomnia, and damage to [his] career." (*Id.*)

Based on the foregoing, Plaintiff brought the instant civil action alleging discrimination in and retaliation in violation of Title VII and the ADA, along with related state law claims. (*Id.* at 3–6.) Plaintiff seeks "back-pay and lost wages," compensatory and punitive damages, "reinstatement of front pay," injunctive relief, costs, and any other relief the Court deems appropriate. (*Id.* at 7.)

## **PROCEDURAL HISTORY**

On May 14, 2026, the Moving Defendants filed the instant Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (Dkt. No. 15.) On the following day, the Court entered an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion.

---

*adopted*, 2016 WL 6275331 (D.S.C. Oct. 27, 2016). However, unverified complaints do not carry the same weight. *See Ward v. Moton*, No. 2:22-cv-04703-TLW-MGB, 2023 WL 9067764, at *6 (D.S.C. Nov. 20, 2023) (noting that an unverified complaint cannot be used as evidentiary support for a plaintiff's claims), *adopted*, 2023 WL 8596008 (D.S.C. Dec. 12, 2023).

(Dkt. No. 19.) When Plaintiff failed to respond by the June 15, 2026 deadline, the Court entered an Order extending Plaintiff's time to respond to July 22, 2026. (Dkt. No. 26.)[2] Plaintiff filed a response in opposition to the Moving Defendants' motion on July 9, 2026. (Dkt. No. 28.) The Moving Defendants replied to Plaintiff's response on July 16, 2026. (Dkt. No. 29.) Plaintiff then filed an untimely "supplemental response" on July 27, 2026. (Dkt. No. 32.) Accordingly, the motion before the Court has been fully briefed and is ripe for disposition.

## LEGAL STANDARDS

The Moving Defendants argue that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 15 at 1.) In the alternative, the Moving Defendants argue that they are entitled to summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*)

When considering a motion to dismiss under Rule 12(b)(6), the Court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the Court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, the Court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Where, as here, matters outside the pleadings are presented to and not excluded by the

[2] Defendants Leonard Bailey and International Longshoremen Assoc. 1422A separately filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment on May 28, 2026 (Dkt. No. 22). Plaintiff declined to respond to this motion, despite the Court issuing another Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), in which the Court advised Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond, and extending Plaintiff's response deadline to July 22, 2026. (Dkt. Nos. 23, 26.)

Court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990).

Because Plaintiff brought this action *pro se*, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## DISCUSSION

The Moving Defendants argue that Plaintiff's claims against them are foreclosed because he previously executed a Resignation, Release, and Covenant Not to Sue (the "Release"), which "extinguishes—and contractually prohibits him from pursuing—the same claims asserted in this action." (Dkt. No. 15 at 1.) The Moving Defendants contend that "Plaintiff knowingly and voluntarily entered into the Release in exchange for valuable consideration." (*Id.* at 4.) More specifically, "Plaintiff received $15,000.00 as settlement consideration in 'full and complete satisfaction of all claims, known and unknown, filed or unfiled,' arising from his employment or

separation. (*Id.*, referencing Dkt. No. 15-1.) The Moving Defendants further explain that the Release "provides that such payment was contingent upon Plaintiff's execution of and compliance with the Release, confirming mutual assent and bargained-for consideration." (*Id.*) The Moving Defendants point out that "the Release unambiguously extinguishes the claims asserted in this lawsuit" because it "expressly includes claims under federal, state, and common law, including discrimination, retaliation, wrongful discharge, and statutory employment claims such as Title VII, the ADA, and related causes of action." (*Id.*) According to the Moving Defendants, "[t]he claims asserted in this action—alleging discrimination, failure to accommodate, retaliation, wrongful termination, and emotional distress—fall squarely within the scope of these released claims, as they arise out of Plaintiff's employment and termination." (*Id.*) The Moving Defendants thus contend that Plaintiff's "attempt to relitigate those matters is barred as a matter of law." (*Id.*) The Moving Defendants further assert that Plaintiff's express covenant not to sue the Moving Defendants regarding any released claims also "independently bars Plaintiff's suit and confirms that dismissal is warranted." (*Id.* at 4–5.) Upon careful review, the undersigned agrees with the Moving Defendants and therefore **RECOMMENDS** that their motion (Dkt. No. 15) should be **GRANTED**.

The Moving Defendants have attached the Release as an exhibit to their motion. (Dkt. No. 15-1.) Plaintiff signed the Release on February 16, 2026. (*Id.* at 5.) The relevant portions of the Release state as follows:

> Released Parties. The "Released Parties" are Charleston Gate Company, LLC, its affiliated companies, and their respective present and former owners, office[r]s, directors, employees, agents, successors, and assigns.
>
> Releasing Parties. The "Releasing Parties" are Mr. Simmons and his heirs, executors, administrators, representatives, agents, successors, and assigns. . . .

Settlement Benefits. In consideration for Mr. Simmons's execution of this Release, and his release of claims as set forth below, Charleston Gate Company, LLC will provide Mr. Simmons the valuable consideration of advancing Mr. Simmons $15,000.00 from his agreed settlement in full and complete satisfaction of all claims, known and unknown, filed or unfiled, Mr. Simmons has or may have against the Released Parties, including but not limited to claims for attorney's fees; back pay; front pay; and emotional distress, loss of reputation, humiliation, embarrassment, discrimination, retaliatory discharge, wrongful discharge, pecuniary loss other than back pay, other compensatory damages, punitive damages, and expenses; and including but not limited to any claim which was asserted or could have been asserted by Mr. Simmons. The payment amount represents claims for emotional distress, loss of reputation, humiliation, embarrassment, pecuniary loss other than back pay, other compensatory damages, and expenses. . . .

Release. In exchange for the Settlement Benefits described [] above, *the Releasing Parties fully and finally release and discharge the Released Parties from any and all claims of any nature, known and unknown, which Mr. Simmons has or may have arising out of or in connection with his employment or separation from his employment*, *through the Effective Date of this Release*.

This Release includes, but is not limited to, any and all claims, charges, actions, causes of action, demands, rights, damages, debts, contracts, claims for costs or attorney's fees, expenses, compensation, punitive damages, and all losses, demands, and damages, including without limitation those claims arising out of, under, or by reason of any and all claims which were or could have been asserted in a Charge, a Complaint, or a related lawsuit. Without limiting the generality of the foregoing, Mr. Simmons specifically releases and discharges Released Parties of any obligation, claim, demand or cause of action based on or arising out of any alleged violation of any legal duty owed to Mr. Simmons by Released Parties under any contract, or under any federal, state, or local statutes, ordinances, or common laws, including but not limited to 33 U.S.C. § 948(a), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended by subsequent congressional legislation including, without limitation, the Civil Rights Act of 1991; 42 U.S.C. § 1983; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*.; the Fair Labor Standards Act; the Equal Pay Act of 1963; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq*.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq*.; the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f); the Consolidated Budget Reconciliation Act; the Occupational Safety and Health Act; any claims under South Carolina, or other state laws, including any claims available under such laws for whistleblowing, wrongful discharge, discrimination, retaliation, harassment, breach of contract, intentional or negligent infliction of emotional distress, defamation, invasion of privacy, interference with rights or breach of contract, or any other cause of action based on federal, state or local law or the common law, whether in tort or in

> contract. The Settlement Benefits described [above] satisfy adequate consideration for Mr. Simmons's waiver and release of any claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq*., and the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), up to the Effective Date of this Release.
>
> *Mr. Simmons is advised to consult with an attorney prior to executing the Release. Mr. Simmons acknowledges that he is being given at least twenty-one (21) days within which to consider the Release. For a period of seven (7) days following his execution of this Release, Mr. Simmons has the right to revoke the Release, and the Release shall not become effective or enforceable until the revocation period has expired. . . .*
>
> <u>Covenant Not to Sue</u>. Mr. Simmons covenants and agrees that he will forever refrain and forebear from directly or indirectly, on his own behalf, derivatively, or on behalf of a class, commence, institute, or prosecute any lawsuit, action, or other proceeding against the Released Parties, based on, arising out of, related to, or connected with any of the Released Claims. If Mr. Simmons breaches this covenant not to sue, he agrees to pay all of the costs and attorney's fees actually incurred by all Released Parties in defending against such claims, demands or causes of action, together with such and further damages as may result, directly or indirectly, from that breach, except that this sentence shall not apply to a challenge of the validity of the Release with respect to a claim under the Age Discrimination in Employment Act ("ADEA"). *This Release shall constitute a complete and absolute defense to any such legal action brought in violation of this paragraph.*

(Dkt. No. 15-1 at 2–4) (emphasis added).

Based on the foregoing, Plaintiff clearly released the claims he now attempts to bring against the Moving Defendants. (*See id.*; *see also* Dkt. No. 1.) Accordingly, Plaintiff must present evidence of fraud or misrepresentation to show that the Release is invalid and defeat the Moving Defendants' Motion. *House v. Aiken Cnty. Nat. Bank*, 956 F. Supp. 1284, 1290 (D.S.C.), *aff'd*, 103 F.3d 118 (4th Cir. 1996). However, Plaintiff fails to provide any evidence beyond his own conclusory allegations to show that he was induced to enter the Release because of fraud or misrepresentation, and the undersigned therefore recommends that the Moving Defendants' motion should be granted. *See id.*; *see also Reed v. Big Water Resort, LLC*, No. 2:14-cv-1583-

DCN-MGB, 2016 WL 7435620, at *11–12 (D.S.C. Apr. 5, 2016), *adopted*, 2016 WL 2935891 (D.S.C. May 20, 2016).

At the outset, Plaintiff does not dispute that he signed the Release, nor does he dispute that he had an opportunity to review the Release before signing it. (Dkt. No. 28 at 1–2). Instead, he claims that "the circumstances surrounding the execution of the agreement raise substantial questions concerning whether Plaintiff's consent was fully informed and voluntary." (*Id.* at 1.) More specifically, Plaintiff contends that "an individual presented to the tribunal as Plaintiff's attorney [during settlement]," but that attorney "was not authorized to represent Plaintiff in the matter." (*Id.*) According to Plaintiff, he "did not retain [an] attorney for the claim at issue and did not authorize [an attorney] to act on [his] behalf." (*Id.*) Thus, "Plaintiff believes the participation of an unauthorized attorney materially affected Plaintiff's understanding of his rights and the settlement process." (*Id.*)

Plaintiff also contends that he "objected to the settlement and has pursued appellate review," and "[t]he existence of a pending appeal concerning the validity of the settlement demonstrates that the issues surrounding the agreement remain disputed." (*Id.*) As such, Plaintiff asks that the Moving Defendants' motion should be denied or, alternatively, "stayed pending resolution of the appeal concerning the validity of the settlement agreement." (*Id.* at 2.)[3]

Outside of these contentions, Plaintiff provides no explanation as to how or why the "circumstances surrounding the execution of the agreement" render it unenforceable. (*See generally* Dkt. Nos. 28, 32.) Plaintiff also fails to provide any evidence (beyond his own self-

[3] In his untimely "supplemental" response, Plaintiff reiterates these arguments and provides additional details, which have been considered but are not pertinent to the recommendations set forth herein. (*See generally* Dkt. No. 32.) Plaintiff also makes arguments in support of his underlying claims against the Moving Defendants. (*See generally id.*) However, the undersigned declines to address the merits of Plaintiff's underlying claims because they are barred by the Release.

serving allegations) to support his claim that the attorney representing him during settlement negotiations was not authorized to act on his behalf,[4] or his claim that he appealed his settlement. (*See generally* Dkt. Nos. 28-1, 32-1, 32-2, 32-3, 32-4, 32-5, 32-6, 32-7, 32-8, 32-9, 32-10, 32-11, 32-12.) In a similar vein, Plaintiff provides the Court with no legal authority indicating that the issues described in his response somehow render the Release unenforceable. (*See generally* Dkt. Nos. 28, 32.)

What is more, the terms of the Release appear fair to Plaintiff and not one-sided, which indicates that he was not fraudulently induced into signing it. (*See generally* Dkt. No. 15-1.) Indeed, the Release conveyed valuable consideration to Plaintiff in exchange for his agreement thereto, and Plaintiff was repeatedly advised to seek counsel before signing. (*Id*. at 2–3.) Further, the Release did not waive or release any claims based on actions or omissions occurring *after* its date, and Plaintiff was afforded seven (7) days following his execution of the Release to change his mind. (*Id*.) These conditions do not suggest unfair bargaining power, as Plaintiff contends.[5] It is also worth reiterating that Plaintiff does not dispute that he had a sufficient opportunity to review the Release before signing it. (*See id*. at 3; *see generally* Dkt. No. 28); *see also Burwell v. S.C. Nat. Bank*, 340 S.E.2d 786, 789 (S.C. 1986) ("One cannot complain of fraud and misrepresentation in the contents of a document if the truth could have been ascertained by reading it."); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2001) (noting that "an elementary

---

[4] Notably, Plaintiff does not dispute that he was encouraged to consult an attorney before signing the Release and/or that he was given at least twenty-one (21) days to consider the Release before executing it. (*See generally* Dkt. Nos. 28, 32.)

[5] To the extent Plaintiff claims that the Release constitutes a "take-it-or-leave-it" contract of adhesion, Plaintiff has submitted no evidence indicating he was required to sign the Release and forego litigation. Even if the Release could be construed as a contract of adhesion, the terms of the Release appear fair to Plaintiff, negating any inference of unconscionability. *See Damico v. Lennar Carolinas, LLC*, 879 S.E.2d 746, 756 (S.C. 2022) ("[A]dhesive contracts are not unconscionable in and of themselves **so long as the terms are even-handed**") (emphasis in original)).

principle of contract law is that a party signing a written contract has a duty to inform himself of its contents before executing it”).

To the extent Plaintiff attempts to argue that the Release is unclear, overly broad and/or against public policy, these arguments would also lack merit. The Release plainly and succinctly describes the claims that Plaintiff is agreeing to release, and those claims are limited to the Released Parties’ past actions arising out of or in connection with his employment or separation from employment. *See Fisher v. Stevens*, 584 S.E.2d 149, 153 (S.C. Ct. App. 2003) (“An exculpatory agreement will be held to contravene public policy if it is so broad that it would absolve [the defendant] from any injury to the [plaintiff] for any reason.” (internal quotation marks and citation omitted)).

Ultimately, the record reflects that the parties mutually agreed to fair and reasonable terms and conditions that are memorialized in the Release. Those terms and conditions include Plaintiff’s release of the claims set forth in this civil action. (*See* Dkt. No. 15-1 at 3.) Plaintiff has simply presented no evidence to suggest fraud or misrepresentation and has failed to raise a genuine issue of material fact about the validity, enforceability, and applicability of the Release. (*See generally* Dkt. No. 28.) Unfortunately for Plaintiff, “having second thoughts about the results of a settlement agreement does not justify setting aside an otherwise valid agreement.” *Young v. F.D.I.C.*, 103 F.3d 1180, 1195 (4th Cir. 1997). The Moving Defendants are therefore entitled to summary judgment as to each of Plaintiff’s attempted claims against them, and their motion (Dkt. No. 15) should be **GRANTED**.

## CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Moving Defendants are entitled to summary judgment as to each of Plaintiff's claims against them, and the Moving Defendants' motion (Dkt. No. 15) should therefore be **GRANTED**. The undersigned **RECOMMENDS** that Defendants Charleston Gate and McCarthy should be dismissed as defendants in this case.

**IT IS SO RECOMMENDED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 31, 2026
Charleston, South Carolina

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).